IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| B.F.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:25-CV-1195-BR |
| | § | |
| Commissioner, Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION
OF THE COMMISSIONER OF SOCIAL SECURITY**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a decision by the Commissioner of Social Security, who denied Plaintiff's application for disability insurance benefits under Title II[2] and for supplemental security income benefits under Title XVI[3] of the Social Security Act ("the Act"). (ECF 1). Plaintiff challenges the Commissioner's decision on one ground: the Administrative Law Judge ("ALJ") failed to develop the record by not ordering a consultative examination, resulting in a residual functional capacity ("RFC") determination not supported by substantial evidence. (ECF 12 at 1).

The Court finds that the ALJ's decision is supported by substantial evidence, and that she did not err is not ordering a consultative examination. The Commissioner's decision is accordingly AFFIRMED.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] 42 U.S.C. §§ 401–33.

[3] 42 U.S.C. §§ 1381–83f.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed the disputed application on July 18, 2022, alleging disability beginning January 1, 2022. (ECF 11-1 at 19).[4] After initial and upon-reconsideration denials, Plaintiff sought a review of his application by an ALJ. (*Id.*).

ALJ Carol Bowen held a telephonic hearing on January 8, 2025, at which a vocational expert and Plaintiff, represented by counsel, both testified. (*Id.*; *see id.* at 39–55 (transcript)). As further explained below, the ALJ found that Plaintiff was not disabled during the period covered by his application. (*Id.* at 31).

The Social Security Administration Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (*Id.* at 6); *see* 42 U.S.C. §§ 405(g), 1383(c)(3) (establishing the subject matter jurisdiction of United States District Courts to review final decisions of the Commissioner) *and Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (confirming that the Appeals Council declining to review an ALJ decision establishes that ALJ decision as final). Plaintiff filed the instant action on October 24, 2025. (ECF 1).

## II.    APPLICABLE LAW

A person may qualify for supplemental security income ("SSI") or disability insurance benefits ("DIB") under the Act if they are disabled. 42 U.S.C. §§ 423(a)(1) (DIB) *and id.* at 1381a (SSI). A person is disabled according to the terms of the Act[5] if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[4] Most pages in the administrative record (ECF 13) have been marked with multiple different, inconsistent page numbers by the various systems that produced the records in question; citations in this Opinion are not to these internal page numbers, but are rather to the page numbers generated by the Court's electronic case filing ("ECF") system, which can be found at the top of the page when a filing is accessed through ECF or PACER.

[5] The Act is, for purposes of this Order, entirely consistent across Title II provisions for DIB and Title XVI's provisions for SSI. *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 23–24 (2003) (noting the identical definitions of "disability" in the two statutory programs). For completeness, this Recommendation will refer to the Act in general terms, but will cite to the distinct provisions applicable to DIB under Title II and SSI under Title XVI.

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A) (DIB) *and id.* at § 1382c(a)(3)(A) (SSI). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); *accord* 20 C.F.R. §§ 404.1572(a)–(b) (DIB) *and* 416.972(a)–(b) (SSI).[6]

ALJs use a standardized framework to determine whether an applicant is disabled under the Act:

> In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). Before proceeding to steps four and five, the ALJ must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) (DIB) *and* 416.945(a)(1) (SSI).

The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Audler*, 501 F.3d at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v.*

---

[6] The Social Security Administration has the authority to promulgate regulations implementing the Act under 42 U.S.C. § 405(a) (DIB) and 42 U.S.C. § 1383b (SSI). In addition to traditional notice-and-comment regulations issued according to the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c), the Social Security Administration also publishes precedential rulings and statements of policy or interpretation known as Social Security Rulings (each an "SSR"). 20 C.F.R. § 402.160(b)(1) (effective January 17, 2025; previously codified at 20 C.F.R. § 402.35).

*Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

A.    Standard of Review

When reviewing disability determinations made by the Commissioner, a court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). These limitations are imposed by statute:

> The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . and where a claim has been denied by the Commissioner . . ., the Court shall review only the question of conformity with [Agency] regulations and the validity of such regulations.

42 U.S.C. § 405(g). If the ALJ fails to apply the proper legal standard, a denial must be remanded and reconsidered. *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). If the ALJ applies the proper standards, however, and relies on any substantial evidence, the decision must be upheld. *Id*.

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion and constitutes more than a mere scintilla but less than a preponderance of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (cleaned up). "It must do more than create a suspicion of the existence of the fact to be established[.]" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The reviewing court may not reweigh evidence or substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Hardman*, 820 F.3d at 151. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).

Even a decision unsupported by substantial evidence will not always be vacated or reversed. An error is harmless and will not result in remand "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v.*

*Saul*, 986 F.3d 551, 556 (5th Cir. 2021).[7] In short, a decision denying Social Security disability benefits is entitled to great deference and will only be overruled if the correct legal standards were not applied, or if the decision turned on a conclusion for which there was no substantial evidence.

### B.    The ALJ's Obligation to Develop the Record

Unlike the adversarial proceedings in Article III courts, proceedings before an ALJ are inquisitorial. *Carr v. Saul*, 593 U.S. 83, 89–90 (2021). The role of an ALJ is not to neutrally adjudicate the better of two competing sides, but is rather to "ensure that [the] administrative process is fair to claimants by conducting de novo, informal, non-adversarial hearings[.]" SSR 13-1p, 2013 WL 633939, *2; *accord* 20 C.F.R. § 404.900(b). This sometimes translates to an obligation to seek out evidence beyond what is submitted by the applicant. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (internal citations and footnotes omitted).

An ALJ's obligation to develop the record will sometimes require ordering a consultative examination. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests"). A consultative examination may be required "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision" on a claim. 20 C.F.R. § 404.1519a(b). The decision to require a consultative examination is

---

[7] Failure to apply the correct legal standard can also be a harmless error; *Keel* itself upheld the harmless application of an erroneous step-two "severity" standard. *Keel*, 986 F.3d at 555–56. However, because an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[,]" a failure to apply the correct legal standard can only be sustained as a harmless error if sufficient reasoning is articulated in his decision to support it under the legal standard that he failed to apply. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

discretionary. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Under Fifth Circuit precedent, an ALJ abuses her discretion by failing to order a consultative examination when "the record establishes that such an examination is *necessary* to enable the ALJ to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (emphasis in original).

A failure to order a consultative examination is "not reversible error unless the claimant is prejudiced." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted).

## III.   THE ALJ'S FINDINGS

At step one of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged disability onset date and the onset date of January 1, 2022. (ECF 11-1 at 22).

At step two, the ALJ found that Plaintiff had the following severe impairments: primary osteoarthritis and residuals of motor vehicle accident. (*Id.* at 23). The ALJ noted that Plaintiff has a medical history that includes hypertension, benign prostatic hyperplasia, anxiety, depression, irritable bowel syndrome, mild obstructive sleep apnea, hyperlipidemia, diverticulosis, chronic kidney disease, chronic pain syndrome, pre-diabetes, and glaucoma, but found that "the evidence show[ed] that these conditions were either managed conservatively without work-related impact being documented, or transient and generally resolved in a short time." (*Id.*). According, the ALJ found that these conditions were nonsevere. (*Id.*).  The ALJ also considered Plaintiff's medically determinable mental impairment of anxiety, and found that it "does not cause more than minimal limitation in Plaintiff's ability to perform basic-work related activities" and was therefore nonsevere. (*Id.*). At step three, the ALJ found that Plaintiff's severe impairments were not equivalent to any disabling impairment listed in the applicable regulations. (*Id.* at 24).

The ALJ then assessed Plaintiff as having:

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently climb, stoop, kneel, crouch, and crawl. Since September 11, 2023, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb, balance, stoop, kneel, crouch, and crawl.

(*Id.*). In making this RFC finding, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF 11-1 at 26).

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a sorter/routing clerk and as a delivery driver. The ALJ then ended the analysis with a finding that Plaintiff is not disabled as defined by the Social Security Act.

## IV.    ANALYSIS

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence because she failed to develop the record when she did not order a consultative examination. (ECF 12). Plaintiff asserts that he submitted an additional 165 pages of medical evidence that was not reviewed by any medical professionals and as a result "the record is devoid of any assessment from a medical source that reviewed the entire record concerning the severity" of Plaintiff's condition. (ECF 12 at 9-10). "[T]herefore, the ALJ's reliance on her own lay assessment of the medical records to estimate the severity of Plaintiff's impairments is legal error."[8]

---

[8] Although Plaintiff also characterizes the ALJ's alleged failure to develop the record as a "legal error," Fifth Circuit precedent treats this issue under the inquiry of "whether substantial evidence supports the Commissioner's decision" pursuant to *Taylor*, 706 F.3d at 602. *Ripley*, 67 F.3d at 557 ("If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he is prejudiced.")

Regarding the ALJ's analysis of Plaintiff's mental impairments, Plaintiff argues "there was evidence that revealed possible limitations related to Plaintiff's mental health impairments, and clarification on those mental health impairments" and a consultative examination would have provided "clarification on those mental health impairments and resulting limitations." (*Id.* at 9-10). As for Plaintiff's physical RFC, Plaintiff contends that "[n]o medical expert assessed the entire treatment records produced" which "left the ALJ in the improper role of playing doctor." Plaintiff argues that had the ALJ ordered a consultative physical and mental examination, "there likely would have been relevant opinion evidence that the ALJ could rely on when formulating Plaintiff's RFC." (*Id.* at 13). Defendant responds that the ALJ properly developed the record and was not required to order a consultative examination. For the following reasons, the Court agrees with Defendant.

As described above, an ALJ is required to order a consultative examination only where it is *necessary* to enable her to make the disability decision. *Hardman*, F.3d at 148. This duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). In, *Hardine v. Kijakazi*, the Fifth Circuit held that the Commissioner's failure to order a consultative examination was prejudicial error where: (1) the Commissioner found that a note from the claimant's treating physician was "not clear" and "vague" regarding "what medical conditions resulted in limitations"; and (2) the Commissioner rejected a finding of anxiety and depression, despite the claimant testifying to symptoms of such, because the records "lacked a definitive diagnosis." No. 21-60226, 2022 WL 2070399 (5th Cir. June 8, 2022). By contrast, a consultative examination is unnecessary where there is "[n]othing in the record [that] suggests that the ALJ needed any more medical information to reach an informed decision." *Webster*, 19 F.4th at 720.

The medical evidence that Plaintiff asserts necessitated a consultative examination did not create ambiguities in the record that would have justified that position. Regarding the Plaintiff's mental impairments under "paragraph B", the ALJ found that Plaintiff had: (1) mild limitation in understanding, remembering or applying information; (2) mild limitation in interacting with others; (3) mild limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. (ECF 11-1 at 23-24). Plaintiff argues this reveals that "there was evidence that revealed possible limitations related to Plaintiff's mental health impairments" and a consultative examination could have clarified those limitations. (ECF 12 at 10). Plaintiff points to treatment notes from Anita Abraham diagnosing Plaintiff with depression and prescribing Lexapro. However, the ALJ's evaluation of Plaintiff's mental impairments as "nonsevere" does not reveal any ambiguities regarding whether Plaintiff had received a diagnosis but rather hinged on the record reflecting that Plaintiff' "has had no impatient hospitalizations for intensive psychiatric treatment or urgent emergency room care for emotional crises" and "has been treated conservatively with psychotropic medication and no further mental health treatment." This is distinct from *Hardine*, where the ALJ specifically rejected a finding of anxiety and depression because the claimant had not received a formal diagnosis.

Here, the record contained sufficient medical evidence to allow the ALJ to determine disability. *See Hardman*, 820 F.3d at 148 (holding that "[t]he ALJ had sufficient facts before him with which to determine whether [the claimant] was disabled" when "[t]he record was replete with medical documents that spanned years"). Specifically, the ALJ consulted clinical records spanning years that showed consistent findings of normal gait, unremarkable physical examination results, and normal back examinations, despite instances of musculoskeletal tenderness, joint swelling, and decreased range of motion. (ECF 11-1 at 26-27). She considered his medical treatment history, which she found to have been "essentially routine and conservative in nature." (*Id.* at 27). The ALJ

also considered Plaintiff's reported daily activities, which reflected that Plaintiff "lives alone, performs personal care, uses his phone for reminders, prepares meals, does household chores, goes out two to three times per week, drives a care, shops in stores and online, manages his finances, goes to church, and works part time as the church organist." (*Id.* at 28); *see also Leggett v. Chater*, 67 F.3d 558 at 565 n.12 (5th Cir. 1995) ("It is appropriate ... to consider the claimant's daily activities when deciding the claimant's disability status.").

As for medical opinion evidence, the ALJ considered the opinions of both the initial and reconsideration DDS medical consultants. She did not find the opinion of the initial medical consultant persuasive because it was "not consistent with the totality of the evidence." In evaluating the reconsideration opinion, the ALJ found it persuasive because it was "supported by its own narrative and summary of evidence." (*Id.*). More specifically, the ALJ found that the opinion showed:

> notations of decreased range of motion to thoracic spine and lumbar spine, positive straight leg raise bilaterally, and right knee MRI showing no acute fracture or dislocation but also includes good reported activities of daily living. The narrative in support of the assessed range of light work with additional postural limitations is also generally consistent with the objective evidence showing lumbar degenerative change, primary osteoarthritis of the knee, and intermittent notations of antalgic gait and edema to the bilateral lower extremities but also notes that the claimant's clinical exams more often than not include no edema, no focal neurologic deficits, normal gait, as previously discussed.

(*Id.*). The ALJ also considered the opinions from both the initial and reconsideration DDS psychological consultants, which "determined the claimant has mild to no limitations in the 'paragraph B criteria and that he has no severe mental medically determinable impairment." (*Id.* at 29). She found these persuasive as they were "supported by their own narrative and summary evidence" and were "consistent with the claimant's grossly mental status findings in the record and his conservative mental health treatment." (*Id.*).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995) and citing *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir.1988)) (footnotes and quotation marks omitted). Because that is not the case here, the ALJ's determination was supported by substantial evidence.

## V.   CONCLUSION

In summary, the decision of the ALJ is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED. Judgment will be entered accordingly.

IT IS SO ORDERED.

ENTERED May 20, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

11 of 11